## PEORIA & PEKIN UNION RAILWAY COMPANY
## v.
## EMMA HERMAN, ADM'X.

*Railroads—Negligence of—Personal Injuries—Crossings— Duty of Railway Company to Provide Flagman—Absence of, not Negligence* per se *—Instructions.*

1. In an action brought against a railway company to recover damages caused by the killing of plaintiff's intestate at a crossing of a highway and defendant's track, where the chief ground of complaint was the failure of defendant to have a flagman stationed at the crossing at the time of the accident, it is *held:* That it was error for the court to instruct the jury that if it was a *reasonable* precaution to be exercised by the persons in charge of defendant's engine to keep a flagman at the crossing, then a failure to do so would be negligence. Unless such precaution was *necessary* it could not be said to be negligence to have omitted it.

2. The failure of a railway company to keep a flagman at a crossing is not negligence *per se* and an action can not be directly predicated on such failure and consequent injury, but it may be based upon the failure of the company to approach the crossing with due care and caution; and the failure to keep a flagman at the crossing, or any other omission, may be shown by way of specifications of the cause of such failure. And if from all circumstances it appears that the doing of a particular thing is necessary to the safety of persons crossing the tracks, then the company is required to do that thing.

3. An instruction to the effect that deceased was required to exercise reasonable care for his own safety at the *time* of receiving the injury was improper.

[Opinion filed August 3, 1891.]

APPEAL from the Circuit Court of Peoria County; the Hon. LAWRENCE W. JAMES, Judge, presiding.

Messrs. STEVENS & HORTON, for appellant.

The defendant was not guilty of negligence.

The plaintiff was bound to prove that Ephraim Herman exercised due care for his own safety. C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; C., B. & Q. R. R. Co. v. Hazzard, 26 Ill. 373; C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C., B. & Q. R. R. Co. v. Dewey, 26 Ill. 255; C., B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; Abend v. T. H. & I. R. R. Co., 111 Ill. 202.

She failed to prove that he exercised the degree of care that was always required by the Supreme Court when it considered questions of fact. C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C., R. I. & P. R. R. Co. v. Still, 19 Ill. 499; I. C. R. R. Co. v. Buckner, 28 Ill. 299; T., P. & W. Ry. Co. v. Riley, 47 Ill. 514; St. L., A. & T. H. R. R. Co. v. Manley, 58 Ill. 300; C. & A. R. R. Co. v. Jacobs, 63 Ill. 178; T., W. & W. Ry. Co. v. Miller, 76 Ill. 278; Austin v. C., R. I. & P. R. R. Co., 91 Ill. 35; C. & N. W. R. R. Co. v. Dimmick, 96 Ill. 42; C., R. I. & P. R. R. Co. v. Bell, 70 Ill. 102; Chicago & N. W. R. R. Co. v. Hatch, 79 Ill. 137.

· It is error to refuse to set aside a verdict that is against the clear preponderance of the evidence. Moyer v. Swygert, 125 Ill. 268; Peaslee v. Glass, 61 Ill. 94; Chicago v. Lavelle, 83 Ill. 482; Reynolds v. Lambert, 69 Ill. 495; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 277; Crouse v. Whitelake, 15 Ill. App. 384; Lincoln v. Stowell, 62 Ill. 84; Mooney v. People, 111 Ill. 388; C., R. I. & P. R. R. Co. v. Herring, 57 Ill. 59; I. C. R. R. v. Chambers, 71 Ill. 519; Ricks v. Stubblefield, 12 Ill. App. 309; C. & A. R. R. Co. v. Barber, 15 Ill. App. 630; Booth v. Hynes, 54 Ill. 363; Southwell v. Hoag, 42 Ill. 446;

Lockwood v. Onion, 56 Ill. 506; Chadwick v. McKee, 18 Ill. App. 646; Keaggy v. Hite, 12 Ill. 99; Koester v. Esslenger, 44 Ill. 476; Hoobler v. Hoobler, 128 Ill. 645; A., T. & S. F. R. R. Co. v. Snider, 127 Ill. 144; Steffy v. People, 130 Ill. 98.

Plaintiff's first instruction is erroneous because—

1.   It instructs that a failure to do certain things is negligence, without proof that the failure contributed to the injury.   T., W. & W. Ry. Co. v. Jones, 76 Ill. 311; I. & St. L. Co. v. Blackman, 63 Ill. 117; G. & C. U. R. R. Co. v. Dill, 22 Ill. 264; C., B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

2.   Because it invades the province of the jury.   Meyers v. I. & St. L. R. R. Co., 113 Ill. 386; C., G. & H. Co. v. O'Brien, 19 Ill. App. 231; C. & E. I. R. R. Co. v. O'Connor, 119 Ill. 586; Pa. Co. v. Frana, 112 Ill. 398; T. H. & I. R. R. Co. v. Volker, 129 Ill. 540; C., M. & St. P. R. R. Co. v. Wilson, 42 A. & E. R. R. Cases, 153 (Ill. case), 24 N. E. Rep. 555.

3.   It defines certain things to be negligence without reference to other precautions taken.   G. & C. U. R. R. Co. v. Dill, 22 Ill. 271.

Plaintiff's third instruction was erroneous because it only required the jury to find that Herman exercised due care *at the time he received the injury.*   C., M. & St. P. R. R. Co. v. Halsey (Ill.), 23 N. E. Rep. 1028; C., B. & Q. R. R. Co. v. Colwell, 3 Ill. App. 545; C., B. & Q. R. R. Co. v. Sykes, 1 Ill. App. 520; C. & N. W. R. R. Co. v. Clark, 2 Ill. App. 116; I. C. R. R. Co. v. Welden, 52 Ill. 290.

And it is no answer to the objection to this or the first instruction that defendant's instructions were accurate.   C., B. & Q. R. R. Co. v. Flint, 22 Ill. App. 502; Star & Crescent Milling Co. v. Thomas, 27 Ill. App. 137; C. & W. I. R. R. Co. v. White, 26 Ill. App. 586; P. & P. U. R. R. Co. v. O'Brien, 18 Ill. App. 28; C. & N. W. R. R. Co. v. Dimmick, 96 Ill. 42; I. & St. L. R. R. Co. v. Blackman, 63 Ill. 117; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 88.

Plaintiff's fourth instruction is erroneous in that it submits to the jury the question whether a flagman ought to have been stationed at this crossing at the time of day the accident

happened, and does not limit the inquiry to the care and caution with which the particular engine was operated.   Heddles v. C. & N. W. Ry. Co., 74 Wis. 239, S. C. 42 N. W. Rep. 237; Haas v. G. R. & I. Co., 47 Mich. 401; Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y. 219; McGrath v. N. Y., C. & H. R., 63 N. Y. 522; Beiseigel v. N. Y. C. R., 40 N. Y. 9; Welsch v. H. & St. J. R. R., 72 Mo. 451; Lesan v. M. C. R. R., 77 Me. 85; Griffin v. N. Y. C., 40 N. Y. 34; C. & I. R. R. Co. v. Lane, 130 Ill. 116.

Messrs. SHEEN & LOVETT and McCULLOCH & McCULLOCH, for appellee.

No argument or citation of authorities will, we think, be necessary to show that the statute designs to make it the duty of every railway company to make their crossings over public highways reasonably safe, and to prohibit them from constructing man-traps; nor is anything more than an inspection of the undisputed evidence necessary to show that this crossing, coupled with the combination of circumstances surrounding deceased at the time of the injury, was nothing less.  This makes the company chargeable with notice of the dangerous circumstances that it constructed.   R. R. I. & St. L. R. Co. v. Hillmer, 72 Ill. 235.   As said in the case last cited, "a railroad company should not permit obstructions upon its right of way near a crossing which will prevent the public from observing the approach of trains upon the track."

Under the common law, railway companies were required to furnish suitable crossings.   People ex rel. v. C. & A. R. R. Co., 67 Ill. 118.   And this duty was enlarged by Sec. 71, Chap. 68 of the R. S., so as to require the companies to make and maintain their crossings and the approaches thereto, in such manner as to have them "at all times safe as to persons and property."   The company constructed these buildings and they precluded a view of the approaching trains.

Again, in the case of C., B. & Q. R. R. Co. v. Lee, Adm'x, 87 Ill. 460, the court says: "Here were obstructions preventing to some extent, at least, a view of the approaching train; it was out of time, running at a fearful rate of speed; no whistle sounded

P. & P. Union Ry. Co. v. Herman.

or bell rung; no effort to check its rate, and no watchman stationed at the crossing to warn persons of approaching danger.    All of which are held by the opinion quoted above to be negligence on the part of the company."

Quoting approvingly from a decision of the United States Supreme Court, in that case it is said :

" It is the duty of a wagon to wait for the train.  The train has precedence of right of way, but it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every caution if the wagon is inevitably in the way.   Such warning must be reasonable and timely."

" If an unslackened speed is desirable, watchmen should be stationed at the crossing.   The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision.   It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach."

At this crossing, in a populous city, the engineer quits his post, has the fireman back his engine, pushing the tender at a high rate of speed toward a crossing, from which to the south and west the engine and tender were invisible.   No watch is put upon the forward end of the tender, the watchman on the crossing is relieved from duty, and the bell, if rung, is not so rung as to be audible to any one but the railroad employes, and not all of them within hearing distance heard it.

LACEY, P. J.  This was an action in case by the appellee against appellant to recover damages accruing to her from the killing of her husband, Ephraim Herman, deceased, by running over him with a car, called a tender, attached to a locomotive engine and being backed over a public crossing in the city of Peoria, where at the same time deceased was crossing in front of the tender.  This crossing was at a place being the extension of Junction street.   This street is fifty feet wide where it ends and the crossing appears to be a continuance of it with planks eighteen feet long in the center between the rails.   The south end of the junction building is on a line with the north

side of Junction street, leaving a space of over twenty feet between the building and the traveled track marked by the planks laid for the crossing. It will not be necessary to give a detailed description of the place and the surroundings of the crossing further than to say that it was necessary on the part of a person approaching the crossing, especially in the absence of a flagman, to use great care and caution to prevent injury when crossing with a wagon and team attached, as the deceased was doing in this instance. It also required a corresponding care on the part of the railroad to so run its trains at that point as to prevent injury. Notwithstanding these requirements the deceased, while crossing the railroad track at this place, on April 7, 1888, was run over and so wounded and injured that he soon thereafter died. As far as will be necessary to notice the points in controversy, the acts of negligence as charged in the declaration were as follows, to wit: That Herman was injured through the appellant's negligence in running an engine and tender at a rapid rate of speed, without ringing any bell or sounding any whistle or giving any other audible signal of its approach; and without keeping any proper lookout and without having any flagman at said crossing to warn persons of danger. It is claimed by appellant that none of these charges were properly proven. Especially is it insisted that it was not proven that no bell was rung or whistle sounded at this crossing, but to the contrary the bell was rung and the whistle sounded at the approach of the crossing. It is also insisted that the evidence overwhelmingly shows that the engine was not being run at a rapid or dangerous rate of speed while approaching the crossing. It is further insisted by appellant that they had the proper lookout; that the engineer was standing on the front end of the engine (the rear end as it was backed toward the crossing) looking back over the crossing between the building and the engine and had as good a view as he would have had if he had been in the cab; that the fireman was in the cab on the side next to the building, keeping a careful lookout over the crossing at the time of the approach. Appellant claims the only point on which there was much contention before

the jury, was that a flagman should have been stationed at the crossing at the time, and that the accident taking place after six o'clock P. M., and there being very little travel over the tracks, a flagman was not needed.  The record shows further, that the city of Peoria in its grant of privilege had reserved and stipulated that such companies should consent to the appointment of as many policemen as the city council of the city of Peoria might deem necessary for the protection of the public, the compensation therefor to be paid by the railroad companies.  The mayor was empowered to make the appointment and in this manner the city assumed control of the appointment of all flagmen and determined when and where they were needed and what compensation they should receive. One John Flood was appointed by the mayor for this station and was acting as flagman at the time, and the hours designated for duty at this station by the mayor were from seven in the morning until six in the evening, and that he was under the control of the mayor and not of the appellant.  Flood was on duty the day of the accident until six in the evening, when he left, as was his custom, and at the time of the accident there was no flagman, and appellant insists that none was necessary, there being but little travel at the time.  It was also a contested question whether the deceased exercised due care for his own safety while approaching the crossing, appellant insisting that appellee failed to prove he did so, but on the contrary failed to keep a lookout for a passing engine as he should have done while approaching the crossing.  We will not undertake, in this case, to pass upon the question of the weight of evidence or to decide whether it was sufficient to support the verdict of the jury; suffice it to say that it was sufficiently close and contradictory to require of the court below to give proper and accurate instructions to the jury.  This, it is insisted by appellant, was not done, and he points out as error the giving by the court of appellee's first, third and fourth given instructions.  The necessary parts of the instructions complained of to raise the questions sought to be decided, are as follows:

The first instruction: "If the jury believe from the evi-

dence that the ringing of a bell or the sounding of a whistle or the keeping of a lookout for persons about to cross said tracks or the keeping of a flagman at said crossing, were reasonable precautions to be exercised by the persons in charge of such engines with reference to the safety of such persons, then a failure to use such reasonable precautions would be negligence on the part of the persons so operating such engines."

The third instruction: "If the jury further believe from the evidence that at the time of receiving such injury the said Herman was in the exercise of reasonable and ordinary care in respect to his own safety and that the persons in charge of and operating the said engine were guilty of negligence in manner and form as charged in the declaration and defined in these instructions, and that by reason of such negligence the said Ephraim Herman was struck and killed, then the plaintiff should recover," etc.

The fourth instruction : "And if the jury believe from the evidence that such flagman was reasonably necessary for said purpose (the reasonable safety of those traveling over the crossing) at the time, to make such crossing reasonably safe, then, under the law, the presence of a flagman employed by the city up until just before the injury occurred, would not release the defendant from its duty to provide such flagman upon that crossing at the time of the injury, provided the appellant had notice that their city flagman usually quit his station before the time of day when the injury occurred."

We think the first and third instructions were erroneous. The first instruction holds that if it was a reasonable precaution to be exercised by the persons in charge of the engine to keep a flagman at the crossing, then a failure to do so would be negligence. It will be observed that this instruction does not base the keeping of flagmen at the station as a necessary reasonable precaution to prevent injury to those crossing, which, we think, to make the instruction good, it should have done. It might be a reasonable precaution and one very proper and appropriate to take and yet not be necessary. Very many things might be done reasonably to prevent injury and yet not be necessary.

And if not necessary it would certainly not be negligence to omit them. If other measures could have been taken equally effective to protect persons crossing from injury from any approaching train, then the keeping of flagmen would be unnecessary although it might be very reasonable to keep one. It would not be proper to hold that the failure to keep a flagman was negligence unless, under all the evidence and circumstances in the case, the injury would result without it; then it would be necessary, and not to do so would be negligence, and in case injury was the result of such failure then a recovery might follow. When we read the first instruction, which we have noticed above, in connection with the third, which tells the jury that if the person in charge of and operating said engine in the manner as charged in the declaration and defined in the instructions, the recovery would follow, we at once see how vicious and injurious the improper definition of what is negligence, as defined in the first instruction in regard to keeping the flagman, would be. The two instructions taken together in such form, we think, would be misleading. It could not properly be said, as supposed in the third instruction, that by reason of the negligence in not keeping a flagman when it was not necessary to protect the deceased, that the injury would or could result from such omissions.

In such case the injury might have resulted from some other cause, either from deceased's own negligence or that of the appellant in not carefully approaching the crossing. The failure to keep a flagman at a crossing by a railroad company is not negligence *per se*, but if at all, only in connection and on account of other conditions which may be shown to exist. It is not a statutory duty and not made by law a negligent act like many statutory requirements. In this connection we will consider the objection made to the fourth instruction. It is objected to this instruction that it left the jury to determine whether the reasonable safety of the traveling public required the defendant to keep a flagman at the crossing at the time of day the accident happened; and if it did the jury were told in substance the defendant would be liable for a failure to have a flagman there. We suppose counsel mean if injury resulted

in consequence of such failure. Nothing is said about recovery in the instruction, however, but that may be predicated on other instructions in connection with this one. It is argued that appellee might show the absence of the flagman as part of the surroundings—as one of the incidents by which the care required in managing the train might be determined, but not in general as a legislative necessity. Appellant quotes a number of authorities from other States and one from our own in support of the doctrine.

In the case of Heddles v. C. & N. W. Ry., 74 Wis. 239, the court say: "So that the question is never whether there should have been a flagman or ought to have been one stationed at the crossing, but whether, in view of his presence or absence the train was moved with prudence or negligence?" In Haas v. ——, 47 Mich. 401, the court says: "It would, no doubt, have tended to the security of travelers at this point, but there is no statute requiring it and the judiciary can not establish police rules on their own judgment where the Legislature has apparently considered none essential." In the case of Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y. 219, the court held that "A railroad company is not bound, and owes no duty so to station flagmen, and negligence can not be predicated of an omission." The Supreme Court of our own State in the case of C. & I. R. R. v. Lane, 130 Ill. 116, in commenting on this subject, says: "Although there was no ordinance requiring a flagman to be placed at the crossings, yet we think the fact that none was there was properly allowed to be shown to the jury as one of the existing circumstances attending upon the alleged injury. The absence of a flagman was not negligence, yet such absence, in connection with proof of the condition of things with respect to population, travel and otherwise in that particular locality, would shed light upon the question of the care and caution on the part of appellant in running its trains as the safety of the public would reasonably require." In C., B. & Q. R. R. Co. v. Perkins, 125 Ill. 127, the court, in speaking of the question of the rights of allowing a plaintiff to prove that no flagman had been stationed at the crossing, says: "If a railroad com-

pany in the running of its trains, accept what the Legislature might prescribe, the position of counsel might be well taken, but such is not the case. A railroad company in the running of its trains is required to use ordinary care and prudence to guard against injury to the person or property of those who may be traveling upon the public highways and are required to cross its tracks, whether required by the statute or not. The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety and common prudence may dictate. Shober v. St. P., M. & Minn. R. R. Co., 28 Minn. 107.

From the last case cited it would appear that while an action can not be predicated directly on the failure to keep a flagman at a crossing, and consequent injury, it may be based upon the failure of the railroad company to approach the crossing with due care and caution, and the failure of the company to keep a flagman at the crossing; or any other omission may be shown by way of specifications of the cause of such failure. And if from all the surrounding circumstances it appears that the doing of any particular thing is necessary to secure the safety of the people crossing the tracks, then the railroad company would be required to do that thing. It is true the railroad company might adopt measures to secure the safety of the public equally effective with the stationing of a flagman at a crossing, and if it did so and made the flagman unnecessary, then it would not be required to have a flagman, and no injury in such case could result for the want of a flagman. In view of the decision, while the fourth instruction may not be logically correct, we can see no such error in it as would be likely to mislead a jury, and we can see no cause for reversal in the giving of that instruction. In addition the declaration specifies as a cause of action, the failure to keep a flagman at the crossing. Another point is made on the third instruction and that is, that the deceased was only required to use reasonable and ordinary care in respect to his own safety at the *time* of receiving the injury. This part of the instruction is claimed to be misleading in not requiring the deceased to use such care while he was approaching the

crossing, as well as at the very moment of receiving the injury. This point is not a new one in this State. It has often been held by the Appellate Court as well as the Supreme Court, that such an instruction is erroneous, as the jury might understand that the deceased was not required to exercise any care for his own safety except at the moment of receiving the injury.

We cite the following cases which clearly support the claim : C., M. & St. P. R. R. Co. v. Halsey, 133 Ill. App. 248; C., B. & Q. v. Caldwell, 3 Ill. App. 545; Same v. Sykes, 1 Ill. App. 120; C. & N. W. v. Clark, 2 Ill. App. 116; I. C. R. R. v. Weldon, 52 Ill. 290. If the writer hereof were deciding the case for the first time he would not feel disposed to construe the word " time " as it appears in the instruction in so limited a sense as to mean the word "moment," but would rather be disposed to hold that it meant the entire occasion of the accident—as well the approach to the crossing as the very moment of the accident; but we feel the question is too well settled by the decisions to allow of a change. We see no error in the giving of appellee's second instruction. For the errors above indicated the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*