THE CHICAGO AND IOWA RAILROAD COMPANY

*v.*

ELLIOTT LANE.

*Filed at Ottawa October 31, 1889.*

1. COSTS—*suing as a poor person—minors within the statute.* Section 5, chapter 33, of the Revised Statutes, in relation to the prosecution of suits without costs, is broad enough in its terms to include all resident plaintiffs, whether they be adults or minors, who are poor persons, and are unable to prosecute their suits and pay costs and expenses.

2. Section 5, chapter 33, of the Revised Statutes, and the proviso made in 1881 to section 18 of chapter 64, entitled "Guardian and Ward," are to be regarded as *in pari materia,* and a sensible and intelligent effect given to the provisions of each. The later statute is not to be so construed as to deprive an infant, who has no means, of the privilege of suing without costs. A motion for leave to prosecute as a poor person is addressed to the judicial discretion of the court.

3. BILL OF EXCEPTIONS—*whether necessary—presumption in support of ruling below.* Where the affidavits on which the trial court acts in allowing a minor bringing suit by his next friend to prosecute as a poor person, without costs, are not preserved in the record by bill of exceptions, it will be presumed that it was sufficiently shown that both the infant plaintiff and his next friend were poor persons, within the purview of the statute.

4. NEGLIGENCE—*as a question of law or fact.* In an action to recover for an injury alleged to have resulted from the negligence of the defendant, it is for the jury to determine, from all the facts and circumstances in proof, whether or not there was contributory negligence,

and it is not the province of the court to tell them that certain facts constitute such negligence as precludes a recovery.

5. It is only when the conclusion of negligence necessarily results from the statement of facts, that the court can be called upon to say to the jury that a fact established negligence as a matter of law. If the conclusion of negligence, under the facts stated, may or may not result, or shall depend on other circumstances, the question is one of fact for the jury.

6. SAME—*evidence—absence of flagman at public crossing.* Although no ordinance of a city required a flagman to be placed at a street crossing by the railway company, where a person receives an injury in attempting to cross, yet in an action by the injured party against the company, for damages, the fact that there was no flagman there may be properly shown to the jury as one of the existing circumstances attendant upon the injury.

7. In such case, while the absence of a flagman at such crossing was not negligence of itself, yet such absence, in connection with proof of the condition of things in respect to the population, travel, and otherwise, in that particular locality, would shed light upon the question of the care and caution on the part of the defendant in running its trains that the safety of the public might reasonably require.

8. Such evidence being properly admitted, and the court having instructed the jury that there was no absolute duty imposed on the company, by law, to keep a flagman at the crossing, and that such omission was not of itself negligence, there was no error in the court declining to tell the jury they should entirely disregard such circumstance in passing upon the question whether or not the company was guilty of the negligence charged in the declaration.

9. PLEADING AND EVIDENCE—*allegations and proofs.* In an action against a railway company to recover for a personal injury at a public street crossing, the declaration contained five counts, the fourth of which charged that the speed of the train was in excess of that fixed by an ordinance of the city. A demurrer was sustained to each count, and under leave to amend, only the third and fifth counts were amended. Afterward, the defendant filed another demurrer, purporting to be to "the amended declaration, and to each and every count thereof," which was overruled, and then the defendant filed the general issue, not limited to any particular counts, but going to the whole declaration, upon which issue was taken: *Held,* that the ordinance of the city was properly admitted in evidence, and that an instruction based upon the fourth count was properly given.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action on the case, brought in the Ogle circuit court, by appellee, Elliott Lane, a minor, by his next friend, Gilbert Lane, against the Chicago and Iowa Railroad Company, appellant.

The injury complained of resulted from a collision between a passenger train on appellant's road and a team and wagon driven by appellee, in the city of Rochelle, at a street crossing, on the 29th day of July, 1887. Bartholomew street runs north and south through Rochelle, and appellant's road runs through the city in an easterly and westerly direction, crossing Bartholomew street. At the crossing of this street and the railroad the collision occurred, resulting in the loss of an arm to appellee.

It appears from the evidence, that the train which collided with the wagon was going east, and the wagon was going south on Bartholomew street. On the north side of the railroad track, and just west of the line of the street, there was on the day of the accident, and had been for a long time before, various and serious obstructions on the north side of the railroad right of way. There was a coal chute, and west of that a trestle-work ten feet higher than the track. There was a thick hedge fence on the line of defendant's right of way, about fifteen feet high, just north of defendant's track, coming up to the sidewalk, and west of that there was a high board fence. Just north of the coal chute there were some trees, a brick house and barn. These obstructions all lay so as to obstruct, to a greater or less degree, the line of vision of appellee as he came near the railroad crossing going south. The first count of the declaration charges that these obstructions were permitted to be on the defendant's right of way, and were of such character as to prevent persons approaching the track from the north from seeing approaching trains from the west, and that defendant was guilty of negligence in so allowing such obstructions on its right of way, and also charges that it ran its train at a high and dangerous rate of speed, and that it neglected

to ring a bell or sound a whistle, as required by statute. The second count alleges the existence of the same obstructions as in the first, and avers that, by reason of its dangerous character, it was the duty of defendant to keep a flagman at that crossing,· and that it was guilty of negligence in not doing so. The fourth count charges negligence, in that the defendant ran its train, on the day of the accident, at a high and dangerous rate of speed, and in violation of an ordinance of the city of Rochelle prohibiting trains from running faster than ten miles an hour within its corporate limits.

A jury trial was had on a plea of the general issue, resulting in a verdict and judgment for plaintiff below for $2500, and that judgment was affirmed in the Appellate Court for the Second District.

Mr. M. D. Hathaway, and Mr. William Lathrop, for the appellant:

If a party rushes into danger, which, by ordinary care, he could have seen and avoided, no rule of law can be invoked to compensate him for the injury he may receive. *Railroad Co.* v. *Gretzner*, 46 Ill. 82; *Railroad Co.* v. *Manly*, 58 id. 300; *Railroad Co.* v. *Bell*, 70 id. 102.

As to the duty of a party to stop before driving upon a railroad track, see *Railroad Co.* v. *Hart*, 87 Ill. 529; *Railway Co.* v. *Hatch*, 79 id. 137; *Railway Co.* v. *Hutchinson*, 120 id. 587; *Seefield* v. *Railroad Co.* 70 Wis. 216; *Messinger* v. *Densire*, 137 Mass. 197.

Appellee was entitled to recover only for the specific act of negligence charged in his declaration. *Railroad Co.* v. *McKee*, 43 Ill. 119; *Railroad Co.* v. *Godfrey*, 71 id. 500; *Manufacturing Co.* v. *Ballou*, id. 417; *Railroad Co.* v. *O'Conner*, 115 id. 254; *Railroad Co.* v. *Bell*, 112 id. 360; *Pennsylvania Co.* v. *Frana*, id. 398; *Railway Co.* v. *Coble*, 113 id. 115.

There was no law or ordinance of the city of Rochelle requiring the railroad company to keep a flagman at this cross-

ing, and the court erred in permitting the appellee to introduce evidence that no flagman was kept there, or that there was no flagman at the crossing at the time of the accident, against the objection of appellant.

If it may be left to a jury to say whether a flagman is necessary at any railroad crossing, and that the railroad company is guilty of negligence in running its train over such crossing without such flagman, then it would matter but little what the evidence of care and prudence in running the train might be, as the jury, from sympathy with one so injured, would unquestionably find the railroad company guilty. Such question is not for the jury. *Beifeigel* v. *Railroad Co.* 40 N. Y. 9; *Dyer* v. *Railway Co.* 71 id. 228.

Messrs. O'BRIEN & O'BRIEN, for the appellee:

Evidence that no flagman was stationed at the crossing was admitted as a circumstance bearing upon the question of negligence in the running of appellant's train. Its effect was limited by the court in admitting it. That such evidence was proper, see *Cordell* v. *Railroad Co.* 70 N. Y. 119; *Richardson* v. *Railroad Co.* 48 id. 846; *Railroad Co.* v. *Dunn*, 78 Ill. 197; *McGrath* v. *Railroad Co.* 25 N. Y. 527; *Weber* v. *Railroad Co.* 58 id. 451; *Linfield* v. *Railway Co.* 10 Cush. 562; *Commonwealth* v. *Railroad Co.* 101 Mass. 202; *Norton* v. *Railroad Co.* 113 id. 369; *Favor* v. *Railroad Co.* 114 id. 352; *Gugenheim* v. *Railroad Co.* 57 Mich. 448; *Eaton* v. *Railroad Co.* 129 Mass. 365; *Thomas* v. *Railroad Co.* 8 Fed. Rep. 728; *Railroad Co.* v. *Dill*, 22 Ill. 264; *Railroad Co.* v. *Ebert*, 74 id. 399; *Railroad Co.* v. *Siltman*, 88 id. 529; *Railroad Co.* v. *Lee*, 87 id. 458.

The third of appellant's instructions refused takes from the jury the question of due care on the part of the appellee, and was properly refused. The same is true of the fourth, and the rule announced by it, requiring appellee to stop his team, is not the law in this State. *Railroad Co.* v. *Lee*, 87 Ill. 460; *Mackey* v. *Railroad Co.* 35 N. Y. 75; *Huckshott* v. *Railroad*

*Co.* 18 Am. and Eng. R. R. Cas. 663; *Railroad Co.* v. *Martin,* 8 id. 253; 6 id. 95; *Kellogg* v. *Railroad Co.* 79 N. Y. 72; *Elbert* v̂. *Railroad Co.* 48 Wis. 606; *Duffy* v. *Railway Co.* 32 id. 269; *Davis* v. *Railroad Co.* 47 N. Y. 400; *Pennsylvania Co.* v. *Frana,* 112 Ill. 404.

It is a question for the jury. *Gugenheim* v. *Railroad Co.* 57 Mich. 448; *Laverenz* v. *Railroad Co.* 56 Iowa, 689; *Mossoth* v. *Railroad Co.* 64 N. Y. 324.

The permission that appellee might sue as a poor person can not be assigned for error.

Mr. Justice Baker delivered the opinion of the Court:

One of the assignments of error is, that the circuit court permitted appellee, by his next friend, Gilbert Lane, to prosecute as a poor person.

Section 5, of chapter 33, of the Revised Statutes, provides: "If any court shall, before or after the commencement of any suit, be satisfied that the plaintiff is a poor person, and unable to prosecute his suit and pay the costs and expenses thereof, the court may, in its discretion, permit him to commence and prosecute his action as a poor person; and thereupon such person shall have all the necessary writs, process and proceedings, as in other cases, without fees or charge."

The statute is broad enough in its terms to include all resident plaintiffs, whether they be adults or minors, who are poor persons, and are unable to prosecute their suits and pay costs and expenses. It is urged, however, that the words of the amendment made in 1881 to section 18, of chapter 64, of the Revised Statutes, entitled "Guardian and Ward," are such as preclude such construction. The language of the amendment is: "*Provided,* that any suit or proceeding may be commenced and prosecuted by any minor, by his next friend, without any previous authority or appointment by the court, on such next friend entering into bond for costs, and filing the same in the court in which * * * such suit or proceeding is instituted."

Said section 5, of chapter 33, and said proviso enacted in 1881, are to be regarded as *in pari materia,* and should be construed together, and a sensible and intelligent effect given to the provisions of each.   It would be a harsh rule, and one which would involve an unreasonable and unjust discrimination which should not be imputed to the legislative intention, that an adult man, who happens to be a poor person, should have the privilege of prosecuting his suit *in forma pauperis,* and without being required to give security for costs, and that an infant, who is equally poor, should be denied such privilege, and compelled to give such security.   The matter of permitting a plaintiff to prosecute his suit as a poor person, is left, by the express terms of the statute, to the judicial discretion of the court where such suit is commenced or is pending, and as in this case the affidavits upon which the court acted in granting such permission are not preserved in a bill of exceptions, it is to be presumed it was sufficiently shown that both appellee and his next friend were poor persons, within the purview of the statute, and unable to give security for costs. There was no error in allowing the cross-motion of appellee to permit him to prosecute as a poor person, and in overruling the motion made by appellant for security for costs.

The duty of a person approaching a railroad crossing with a wagon and team, even when such wagon is old and makes considerable noise, and when he knows there are obstructions which to some extent interfere with the view of an approaching train, and also knows a train is due about that time, to bring his team to a full stop before driving upon the railroad track, is not so absolute and unqualified as that a court can say, as matter of law, and regardless of all other attendant circumstances, that such person is guilty of a want of ordinary care. It is for the jury to determine, from all the facts and circumstances in proof, whether or not there was negligence, and it is not for the court to tell them that certain facts constitute such negligence as precludes a recovery.   *(Chicago, Burling-*

*ton and Quincy Railroad Co.* v. *Lee, Admx.* 87 Ill. 454; *Pennsylvania Co.* v. *Frana,* 112 id. 398; *Continental Improvement Co.* v. *Stead,* 5 Otto, 161.)    There was, therefore, no error in the ruling of the court upon the fourth refused instruction asked by appellant, or in its refusal to give the appellant's third refused instruction, which also took the questions of ordinary care, and of negligence on the part of appellee, away from the jury.

The court also denied the motion of appellant to give the following instruction :

"The court instructs the jury that the fact, (if you so believe from the evidence) that the defendant did not have or keep a flagman at the crossing in question is not evidence of negligence of the defendant, under the issues in this suit, and the jury should entirely disregard the same in passing upon the question of whether or not defendant was guilty of negligence as charged in the declaration in this cause."

There was evidence before the jury tending to prove that the place where the collision occurred was in a thickly populated neighborhood, about three blocks from the business center of the city, and that there was considerable travel on Bartholomew street at that place.    The court, over the objections of appellant, had admitted evidence that there was no flagman at the crossing.    The court, in instructing the jury, told them that evidence as to whether a flagman was stationed at the crossing in question at the time of the alleged injury had been admitted, not as tending to show any neglect on the part of the company in that regard, but solely as bearing on the question of the alleged negligence on the part of the company in running its engine and train; and further, that there was no absolute duty imposed on the company by law to maintain a flagman at the crossing in question, and a failure to maintain or have a flagman there was not, of itself, negligence, and that the jury should not consider the evidence as to whether a flagman was maintained or stationed there,

as tending, of itself, to establish negligence.   Although there was no ordinance requiring a flagman to be placed at the crossing, yet we think the fact there was none there was properly allowed to be shown to the jury as one of the existing circumstances attendant upon the alleged injury.   The absence of a flagman was not negligence, yet such absence, in connection with proof of the condition of things, in respect to population, travel, and otherwise, in that particular locality, would shed light upon the question of the care and caution on the part of appellant in running its trains that the safety of the public would reasonably require.   The instructions the court gave sufficiently guarded the interests of appellant against any improper inference that might be deduced from the circumstance there was no watchman, and the court very properly declined to tell the jury they should entirely disregard such circumstance in passing upon the question whether or not appellant was guilty of the negligence charged in the declaration.

The substance of instruction No. 4, given for appellee, was, that if, at the time of the injury, there was an ordinance in force in the city of Rochelle, limiting the rate of speed of locomotive engines and trains of cars within the city to ten miles an hour, and the place where plaintiff was injured was within the city, and the defendant, by its servants, on the occasion of the injury, ran its train within the limits of the city up to and across Bartholomew street at a greater rate of speed than ten miles an hour, and struck and injured the plaintiff, as charged in the declaration, in consequence of running its train at a greater rate of speed than ten miles an hour up to and across said street, and plaintiff used and exercised due care and caution for his own safety, then the defendant was liable. It is objected to this instruction that a demurrer was sustained to all five counts of the original declaration; that under the leave taken to amend, only the third and fifth counts were amended; that there were issue and trial only on them; that neither the third nor the fifth count alleged any ordinance of

the city of Rochelle, or charged the violation of any ordinance of the city by appellant in running its trains, and that, consequently, as appellee could only recover for the specified acts of negligence charged in the declaration, it was error to admit in evidence the ordinance of said city, and error to give said instruction. This is very clearly a misapprehension of the record. It appears therefrom that the ordinance in question was properly pleaded in the fourth count of the declaration, and that on December 13, 1887, a demurrer was sustained to all five of the counts, and leave given to amend. It further appears from the record, that on December 24, 1887, appellant filed another demurrer, which purports to be to "the said amended declaration, and each and every count thereof," and the demurrer is special, and points out specific objections to each and every of the five counts of the amended declaration, and the cause of demurrer shown therein to the amended fourth count is as follows: "That the plaintiff does not, in and by the fourth count of his said amended declaration, aver or state that he, the plaintiff, used due care and caution in approaching the crossing where the injury alleged occurred." The record further shows, that on January 5, 1888, the demurrer to the amended declaration was overruled, and that on January 9, 1888, appellant filed a plea of not guilty, which was not limited to any particular count or counts, but went to the whole declaration, and that issue was joined thereon. The premises upon which appellant bases its contention being contradicted by the record, the conclusion reached, as matter of course, is wrong.

The ninth instruction given for appellee states the doctrine of comparative negligence with unusual accuracy and perspicuity, and embodies in it the requirement of ordinary care on the part of appellee. Appellant insists the instruction is "wrong, inapplicable, and should not have been given, for the reason the evidence established appellee's gross negligence as matter of law, and the court should have so instructed the

jury, instead of giving this instruction in reference to compar-
ative negligence," and cites *Chicago and Eastern Illinois Rail-
road Co.* v. *O'Connor,* 119 Ill. 586, as sustaining such claim.
The doctrine of that case is, that it is only when the conclusion
of negligence necessarily results from the statement of fact,
that the court can be called upon to say to the jury that a fact
establishes negligence as a matter of law, and that if the con-
clusion of negligence, under the fact stated, may or may not
result, or shall depend on other circumstances, the question
is one of fact for the jury.

The contention of appellant that appellee was guilty of such
negligence that, as matter of law, it precludes him from the
right of recovery, is based upon the facts as stated by appellee
himself. His evidence was: "I had a lumber wagon and a
team. One of them was from sixteen to eighteen years old,
the other from nine to ten. I was standing up in the wagon.
I approached the railroad crossing from the north, and was
driving south. There is a cross-walk one street north of the
railroad, on Bartholomew street. It is about ten rods north
of the crossing. From the cross-walk I went in a slow trot,—
a jog. I went slower before I got to the track. From the time
I left the cross-walk until I reached defendant's track I looked
for trains three or four times. I listened as well as I could.
My hearing was good. My eyesight was good. I looked for
trains east and west,—both ways. I was about five feet four
inches tall." The witness described the obstructions to the
view, and continued: "I was nearly on the track when I saw
the train. I seen it, and I tried to stop the horses, or pulled
upon them, and they saw the train, and it scared them, and
they started, and that is about the last I remember. I saw
the engine; it was running towards me—running east. When
I first saw the engine the horses' heads were nearly on the
track,—probably within five or six feet of the track,—and the
engine was probably a rod off. I didn't hear any bell ring on
the engine that day. I was driving my team and looking for

a train. I was listening for the train. I could not say whether the bell rung or the whistle sounded. I didn't hear it. I had driven along there more than a dozen times, probably; I guess about twenty times. I was going about four miles an hour when I went over the cross-walk. From the street crossing to the railroad I was going less than four miles an hour. It was an old wagon. It made considerable noise when I was driving on a trot or jog. I commenced making observations when I was up at the walk—was looking around to see if there were any trains coming. I knew about what time the train generally came in. I didn't have any time with me; didn't know as to what time it was; knew there was a train coming before noon. I didn't stop my team to a dead halt to listen to know whether any train was coming. I didn't stop my team off from a slow trot."

We are unable to say, from this testimony, that there was no evidence tending to prove the exercise of ordinary care on the part of appellee, or that the court should, of its own motion, have instructed the jury, as matter of law, that appellee was guilty of such negligence as prevented a recovery by him, or that it was error to submit to the jury the question of comparative negligence.

Very numerous other objections are urged to the instructions given for appellee, but they are technical and without merit, and do not require special notice. The instructions were substantially correct, though some of them may be open to verbal criticism, as not being technically accurate. The jury was fully and fairly instructed, and the fifteen instructions which were given at the instance of appellant stated the law as favorably to it as could reasonably be asked.

All controverted questions of fact have been settled by the verdict and judgments below.

We find no error in the record that would justify a reversal, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*