### James M. Smith *et al.*

*v.*

### The People, for use of Anna Williamson.

*Filed at Ottawa May 12, 1892.*

1. Intoxicating liquors—*action against saloon-keeper—for death caused by intoxication—instruction as to negligence of deceased.* In an action against a saloon-keeper on his bond, by a wife, to recover for a loss of her means of support, caused by the death of her husband while intoxicated, an instruction that no recovery could be had if the death of the deceased was occasioned by the negligence, want of caution or willful act of the deceased, is properly refused, as it does not exclude the hypothesis that such negligence, want of caution or willful act was not due to or caused by his intoxication.

2. Same—*evidence that deceased was an habitual drunkard.* Where the declaration contains two counts or assignments of breaches, one for causing the death of the plaintiff's husband by the sale of intoxicating liquor to him, and the other charging that the principal defendant, in the lifetime of the husband, sold and gave him intoxicating liquors, he being then an habitual drunkard, whereby plaintiff was injured in her means of support, it was *held,* that under the count last named, evidence of the habits of the deceased prior to his death, in relation to drinking liquor, is properly admitted, and it is not error to refuse to instruct the jury not to consider such evidence.

3. Such evidence is not admissible, however, for the purpose of forming a basis for the allowance of punitive damages, as the sureties on the bond are not liable to exemplary damages, but only for such actual damages as the party for whose use the action is brought may sustain either in person, property or means of support.

4. SAME—*instruction submitting whether beer is intoxicating.* The fact that beer sold to a party is intoxicating liquor may be shown by other than direct and positive proof. Proof that the party drank beer many times during the afternoon of the day of his death, and until nine o'clock at night, in a saloon, and became intoxicated, and left there with a bottle of whisky, is sufficient evidence that the beer drank was intoxicating upon which to base an instruction submitting to the jury the question of whether the beer was intoxicating.

5. SAME—*degree of intoxication.* In an action by a widow upon the bond of a dram-shop keeper for depriving her of her means of support, an instruction in relation to the death of her husband was given, which contained the words, "caused from intoxication in whole or in part produced by the sale of intoxicating liquor sold to him by the defendant, S." It was *held,* that the words plainly mean, in whole or in part produced by the sale of intoxicating liquor sold to him by such defendant, and do not mean either intoxication in whole or in part, or caused from intoxication in whole or in part.

6. In such case, even if there was intoxication "in part," or partial intoxication, yet if such intoxication was sufficient to have caused the death of the plaintiff's husband the case would still be within the purview of the statute. So if, notwithstanding the intoxication of the deceased, he would not have been killed if his horses had not run away, yet, nevertheless, there would have been a good cause of action, the *gravamen* of the action being, that he, in consequence of his intoxication, was unable to properly manage and control his team, and that in consequence thereof they ran away.

7. SAME—*giving of liquor—allegation and proof.* In an action on the bond of a dram-shop keeper by a widow, to recover damages for being deprived of her means of support by the sale of intoxicating liquor to her husband, causing his intoxication, the submission to the jury of the question of the giving of such liquors to the husband is not error, where the declaration alleges the giving as well as the sale of such liquors to him, and there is some evidence, though slight, of the gift of such liquor to the husband.

8. SAME—*defined.* It is not error to refuse to instruct the jury, on behalf of the defendant, that as a matter of law the word "intoxication," used in the Dram-shop act, means "excited to frenzy."

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Carroll county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. M. Hunter, and Mr. D. S. Berry, for the appellants:

Selling intoxicating liquor, and giving intoxicating liquor, are two separate and distinct charges. Proof of the one will not sustain an allegation of the other. No evidence was admitted or offered in this case, of the giving of any liquor by defendant to Williamson, and hence the first, second, third, fifth and seventh instructions asked by plaintiff and given by the court are vicious, in that they inform the jury that if they believe, from the evidence, intoxicating liquor was "given," etc., to Williamson, they should find for plaintiff. We contend that the above named five instructions are bad,—first, because there was no evidence that the article sold was intoxicating; and second, because there was no evidence of the giving of an intoxicating or any other drink. *Seigel* v. *People,* 106 Ill. 89; *Humpeler* v. *People,* 92 id. 400; *Sewing Machine Co.* v. *Layman,* 88 id. 39; *Railroad Co.* v. *Dixon,* 88 id. 431; *Frantz* v. *Rose,* 89 id. 590.

Before the plaintiff could recover it was necessary to show, first, that Smith sold or gave to her husband intoxicating liquors; second, that the selling or giving of such liquors caused, in whole or in part, his intoxication; third, that such intoxication caused his death; and fourth, that by reason of his death she was injured in her means of support. *Flynn* v. *Fogarty,* 106 Ill. 263.

The sixth instruction asked by plaintiff, and given by the court, is subject to the above criticism. In it the court tells the jury, "that if they believe, from the evidence, that the plaintiff has been injured in the means of support in consequence of the death of her husband, William Williamson, caused from intoxication in whole or in part produced by the sale of intoxicating liquors sold to him by the defendant James M. Smith, the jury should determine the amount of such damages," etc. From the wording and punctuation of this instruction, which was given to the jury in typewriting, they could not very well have evaded the idea that the intoxication

29—141 Ill.

might have been in whole or in part. The phrase, "in whole or in part," follows the word "intoxication" without a comma or any mark to show that it is not descriptive of that word. If that phrase could or might have reasonably been so looked upon by the jury, or any of them, then they looked upon that instruction as informing them that an intoxication,—a part or partial intoxication,—was sufficient for the plaintiff to have proved, which is not the construction placed by this court upon the statute under which this action is brought.

In this case it devolves on the plaintiff to prove that the beer sold was intoxicating. There is no way for that fact to be presumed or judicially recognized. *Hausberg* v. *People*, 120 Ill. 21; *Lathrop* v. *State*, 50 Ind. 555; *Kins* v. *State*, 79 id. 488; *State* v. *Riddle*, 54 N. H. 379; *State* v. *Wall*, 34 Me. 165; *State* v. *Starr*, 67 id. 242; *State* v. *Chappell*, 116 Mass. 7.

The court, over the objection of the defendants, admitted evidence to go to the jury of the habit of the deceased in relation to drinking liquors and becoming intoxicated prior to the time of this occurrence, and in no way connected with the charge of sale or giving to him of liquors by the defendant Smith, or with his alleged intoxication on the day of his death, and relating simply to the act that on former occasions he had drank liquor to excess.

Mr. GEORGE L. HOFFMAN, and Mr. JAMES SHAW, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was debt against James M. Smith and his sureties on a bond given in compliance with the requirements of section 5 of the Dram-shop act, and the bond was conditioned for the payment to all persons of all damages that they might sustain, either in person or property or means of support, by reason of said Smith selling or giving away any intoxicating liquors. The suit was prosecuted in the name of the People

of the State of Illinois, for the use of Anna Williamson. The declaration contained two assignments of breaches. The substance of one was, that said Smith, on divers occasions, sold and gave away intoxicating liquors to William Williamson, the husband of said Anna Williamson, by means whereof said William became and was habitually intoxicated, and, by reason of so being habitually intoxicated, wasted and squandered his moneys, income and property, and became and was greatly impoverished, reduced, and degraded in mind and body, as well as in his estate, and greatly neglected his duties as a farmer and stock raiser and other business, and thereby said Anna, being his wife, lost and was deprived of her means of support. And the substance of the other was, that on the 12th day of August, 1889, said William Williamson, being in a state of intoxication caused by said Smith selling and giving to him intoxicating liquors, was incapacitated, by reason of such intoxication, from properly and safely managing, driving and controlling a team of horses drawing a wagon in which he was riding, by means whereof said team ran away and said William Williamson was thrown out of the wagon and killed; and that thereby said Anna Williamson was injured in and deprived of her means of support. Upon the issues formed in the case there was a jury trial, and a verdict and judgment for the penalty of the bond and for $1000 damages, and the judgment was afterwards affirmed in the Appellate Court.

Complaint is made by Smith and the other appellants of some four or five of the instructions which were given on the motion of the plaintiff below, on these grounds: that by them the court submitted to the jury the question of the giving of intoxicating liquors as well as the question of the selling of such liquors, and also submitted the question whether or not the beer which William Williamson drank at the saloon of Smith during the afternoon and night of the 12th of August, 1889, was an intoxicating liquor. In respect to the first objection, suffice it to say that the declaration alleged as well the

giving as the selling of intoxicating liquors, and that there was some evidence, though but slight, tending to prove the giving of such liquors. The second objection is likewise untenable. It may be that no witness testified, in positive terms, that the beer that Williamson drank on the 12th day of August was an intoxicating liquor; but that fact, like most other facts, may be established by other than direct and positive proof, and here the proof was ample that Williamson drank beer very many times during the afternoon, and until about nine o'clock at night, in the saloon of Smith, and became intoxicated, and left there with a bottle of whisky in his pocket. If the direct result of drinking Smith's beer was intoxication, it may reasonably be presumed that Smith's beer was an intoxicating liquor. Instruction No. 5 did not assume that beer is an intoxicating liquor, but left it to the jury to determine, from the evidence, whether the death of Mrs. Williamson's husband "was occasioned by intoxication produced by beer which was intoxicating, or other intoxicating liquors sold or given to him by the defendant."

We have difficulty in comprehending the point of the criticism made by appellants on the clause found in instruction No. 6, which reads as follows: "caused from intoxication in whole or in part produced by the sale of intoxicating liquors sold to him by the defendant James M. Smith." Very plainly this means, "in whole or in part produced by the sale of intoxicating liquors sold to him by the defendant James M. Smith," and does not mean either "intoxication in whole or in part," or "caused from intoxication in whole or in part." We do not see how it could reasonably be understood by the jury otherwise than we have suggested; but even if there was intoxication "in part," or partial intoxication, yet if such intoxication was sufficient to have "caused" the death of the deceased, we are unable to see why the case is not within the purview of the statute. So, also, if, notwithstanding the intoxication of the deceased, he would not have been killed if

his horses had not run away, yet nevertheless there would be a good cause of action. The very *gravamen* of the case is, that he, in consequence of his intoxication, was unable to properly manage and control his team, and that in consequence thereof they ran away, and he was thrown out of the wagon and killed.

It is assigned as error that the court refused to give certain of the instructions asked by appellants. It was not error to refuse to tell the jury that, as a matter of law, the word "intoxication," used in the Dram-shop act, means "excited to frenzy." The denial of the instruction that no recovery could be had in the case if the death of the deceased was occasioned by the negligence or want of caution or willful act of the deceased in handling or driving a dangerous team, was clearly not error. The instruction does not exclude the hypothesis that such negligence, want of caution or willful act was due to or caused by his intoxication.

Instruction No. 3 was properly refused, and for like reason. Even if the clips or fastenings on the whiffletrees dropped off and allowed the tongue of the wagon to drop down upon the road, and in consequence the team became frightened and unmanageable, and ran away, yet, *non constat*, that if the deceased had been duly sober and in fit condition to manage and control the team he would not have been able to prevent the running away of the horses or the overturning of the wagon.

The court refused to instruct the jury that they had "no right to consider any evidence in relation to William Williamson having been drunk on former occasions not connected with the time of his death, or any habit the deceased may have had of using intoxicating liquors prior to the day of his death." It also, over the objections of appellants, admitted evidence of the habit of the deceased, prior to the day of his death, in relation to drinking liquors and becoming intoxicated. These rulings of the court are questioned by the assignments of error. It must be borne in mind that there are

two assignments of breach in the declaration, and that the first of them is, that appellant Smith, in the lifetime of William Williamson, sold and gave said Williamson intoxicating liquors, he, said Williamson, then being an habitual drunkard, and that thereby his wife, the appellee, was injured in respect to her means of support. The challenged evidence was admissible under this first breach, and the giving of the proffered instruction would have been understood by the jury as excluding from their consideration all claim for damages based on said breach. There was no error in said rulings. The evidence was not admissible, however, for the purpose of forming a basis for the allowance of punitive damages. In *Cobb* v. *The People,* 84 Ill. 511, this court held, that in a suit on a bond executed under section 5 of the Dram-shop act exemplary damages can not be recovered, but only such actual damages as the party for whose use the suit is brought may sustain, either in person, property or means of support. This case was, by the instructions of the court, submitted to the jury upon the theory of actual damages, only, and therefore the qualification just noted is here unimportant.

We find no error in the judgment of affirmance rendered in the Appellate Court. It is affirmed.

*Judgment affirmed.*