## Hugh M. Shorb v. Keturah Webber.

1. DRAM-SHOP ACT—*Evidence of Medical Expert as to the Effect of Liquor upon the Human System.*—In an action by a widow against a dram-shop keeper to recover for loss to her means of support by the intoxication and consequent death of her husband, it is not error to permit a medical expert to testify how liquor acts upon the human system.

2. SAME—*Improper Assumption of Facts by Expert Witness Not Always Reversible Error.*—Where an expert improperly assumes a fact in an answer, the court will not reverse for refusal to exclude the answer, where the jury could not fail to reach the same conclusion of fact from the evidence.

3. INSTRUCTIONS—*When a Party is Estopped to Complain.*—One can not complain of language in an instruction given for his opponent, when the same language is contained in an instruction given at his own request.

4. SAME—*Inviting the Jury to Make Comparisons Properly Refused.* —In a case under the dram-shop act it is proper to refuse an instruction offered by defendant which says that plaintiff must prove that deceased was "wholly intoxicated" before she can recover, and which invites the jury to a comparison between "partially intoxicated" and "wholly intoxicated," where other instructions require plaintiff to prove that deceased was intoxicated.

5. SAME—*Assuming That One Party Has an Advantage.*—In such a case an instruction offered by defendant is properly refused which says that plaintiff has a decided advantage, and that the law should be strictly construed in behalf of defendant.

Action Under the Dram-Shop Act.—Appeal from the Circuit Court of Winnebago County; the Hon. JOHN C. GARVER, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed June 8, 1900.

R. K. WELSH and C. W. FERGUSON, attorneys for appellant.

The Dram-Shop Act is a statute of a highly penal character and provides rights of action and remedies unknown to the common law in which the person prosecuting has a decided advantage over the party defending and therefore it should receive a strict construction. Freese v. Tripp, 70 Ill. 496; Meidel v. Anthis, 71 Ill. 241; Cruse v. Aden, 127 Ill. 231.

Appellee, to recover in this action, must clearly bring her-

self, by her proof, within a strict construction of the terms of this statute. There must have been intoxication. The liquor furnished must have contributed to that intoxication in some essential and appreciable degree. Flynn v. Fogarty, 106 Ill. 263; Lane v. Tippy, 52 Ill. App. 532; Morley v. Moulton, 45 Ill. App. 304.

It is improper to permit a physician to give his opinion as to the cause of an injury, such as the bruise or contusion on the head of Webber, judging from the condition in which he found the body, and without any personal knowledge as to how in fact it was occasioned. Hitchcock v. Burgett, 38 Mich. 501; National Gas Light & Fuel Co. v. Miethke, 35 Ill. App. 629; Wabash Western Railway Co. v. Friedman, 41 Ill. App. 275; Birmingham Fire Ins. Co. v. Pulver, 126 Ill. 329.

Fisher & North, attorneys for appellee.

The question of whether or not the liquor purchased at the saloon of appellant contributed to produce intoxication, is a question of fact for the jury. Stringan v. Parker, 159 Ill. 304; Sellars v. Foster, 27 Neb. 118 (42 N. W. Rep. 907).

The gravamen of the case is the intoxication, and if there was intoxication in part, or partial intoxication sufficient so that deceased was unable to properly manage his team or control himself, and in consequence thereof met his death, such intoxication is within the meaning of the statute. Smith v. The People, 141 Ill. 447.

Mr. Justice Dibell delivered the opinion of the court.

This was a suit by appellee against appellant to recover for loss to her means of support by the death of her husband, Thomas H. Webber, February 2, 1899, alleged to have been caused by his intoxication produced by liquors sold him at appellant's saloon at Rockton. Appellant pleaded the general issue, and a jury awarded appellee $3,000, for which judgment was rendered, and this is an appeal therefrom.

1. Appellant claims the preponderance of the evidence does not show Webber was intoxicated, nor that intoxica-

tion caused his death. We think there is a clear preponderance of proof that Webber drank at several saloons in Rockton that afternoon; that he then drove a short distance into the country and got a hog he had previously bought, and was then seen to be seriously under the influence of liquor; that he then drove back to the village, hitched his team in front of appellant's saloon about six o'clock P. M., left his team unfed, went into defendant's saloon, and stayed there nearly all the time for the next four hours, and during that time bought liquor and drank it frequently there, perhaps as many as fifteen drinks during the four hours, and showed signs of intoxication; that about ten o'clock P. M. he got upon his wagon and started for his home two and a half miles distant; that a short distance out of the village he was seen by an acquaintance in a position on the wagon indicating intoxication, and lack of control of his team; that later in the night he was found dead in the road half a mile from home, lying in such a position and with such a wound on his head as indicated he had fallen from his wagon, struck upon his head and had thereby been killed. His clothes were saturated with urine. There were no foot marks to indicate he had walked to the place he was found. The tracks of his wagon wheels were discernible, and on each side were marks indicating one of the lines had dragged on each side of the wagon for 100 rods back of where he was found. His whip was found eighty or ninety rods back. When a physician arrived on the scene between three and four o'clock A. M. his body was still warm, and yet when first found, about three o'clock, his arm was frozen and his hand was frozen stiff, indicating his hands may have frozen before he fell and was killed. We think the jury was warranted in concluding Webber's death was caused by intoxication produced by liquor bought and drank in appellant's saloon. The team did not reach his home till about two o'clock, and no one knows how they were detained so long on the road, but if that fact had any tendency to show Webber's death was not caused by his intoxication it has been duly submitted to the jury. It

might easily be that the lines dragging upon the ground caught under the wheels and stopped the team, or that the horses were sufficiently docile and intelligent to stop when their master fell.   It is evident they did not run when they might have done so.

2.   It was not error to allow Dr. Helm, a medical expert, to testify how liquor acts upon the human system.   The object was to show that the complete effect of the liquor does not immediately follow its reception into the stomach.

3.   Dr. Cole, a medical expert, who between three and four A. M. reached deceased lying in the road, was asked what, in his opinion, caused the wound on Webber's head he had already described.   This was objected to, and the court held he could state what might have caused it. Appellant excepted to the question.   The question, as modified by the ruling, was proper.   The doctor answered, "I think the wound was caused by striking on the frozen ground from the wagon when he fell."   No motion to exclude the answer was made at the time.   Long after the witness had left the stand such a motion was made, though in language not very plainly referring to this answer.   The motion was denied and appellant excepted.   The physician might properly have answered that the wound could have been caused by striking on the frozen ground if deceased fell from the wagon; and it was not proper for the physician to assume that Webber fell from the wagon.   But it is so clear from the evidence that the wound was received in that way, that no harm could have been done appellant by the answer.   The jury could not have failed to draw the same conclusion.   The question as amended by the court having been proper, if defendant was dissatisfied with the answer he ought to have made the motion to exclude while the witness was on the stand, so as to enable plaintiff to repeat the question and elicit a responsive answer.

4.   It is a very strained construction of plaintiff's first and second instructions which finds in them any assumption that Webber was intoxicated.   We think they leave that question to the jury.   But if they had any tendency to be

understood as assuming Webber was intoxicated, several instructions for defendant so plainly told the jury that plaintiff must prove the intoxication by the preponderance of the evidence that the jury could not have been misled on that subject. As to the expression in said first and second instructions for plaintiff that it must be shown such liquor " in whole or in part " caused the intoxication, it was not only correct under Smith v. The People, 141 Ill. 447, and other cases, but the same language was used in the first instruction which the court gave at the request of defendant, so that he can not complain. I. C. R. R. Co. v. Beebe, 174 Ill. 13.

5. The court so modified an instruction requested by defendant as to exclude therefrom an invitation to the jury to a comparison between " partially intoxicated " and " wholly intoxicated," and so as to exclude the theory that the jury must believe Webber was " wholly intoxicated " before plaintiff could recover. As offered, this instruction was calculated to mislead the jury, and to give them to understand that intoxication must have been carried to its utmost limits—that Webber must have been insensible from drunkenness—before plaintiff could recover. As modified and given, the instruction required plaintiff should prove Webber was intoxicated, and that is all the law requires on that subject. Besides, the point appellant was seeking to enforce was given to the jury in defendant's fifth instruction, as follows :

" The court further instructs you that it is not sufficient, in order to hold the defendant liable in this case, that the deceased, Thomas H. Webber, merely felt the liquor which he had been drinking, or that he was slightly under the influence of liquor, and that he was feeling good merely, but that it is absolutely essential, before there can be any recovery, for you to believe from all the evidence that the deceased was intoxicated. And if you believe from all the evidence that the deceased was not intoxicated, and that when he left defendant's place of business on the evening in question he was perfectly able to take care of himself and did not thereafter become intoxicated from liquors obtained from the defendant, then you must find the defendant not guilty."

We think defendant has no cause of complaint on that subject.

6. The first instruction offered by appellant and refused, relative to the impeachment of the witness Charles Murray, was fully covered by three instructions on the subject, given at defendant's request, and it was inaccurate in using the term " any material matter or thing," instead of " any matter material to the issue." The ground of the fourth refused instruction was covered by given instructions. The fifth refused instruction was incorrect in telling the jury that the plaintiff had a decided advantage and that in behalf of defendant the law should be strictly construed. It is not necessarily true that the plaintiff has any advantage, and it is not for the jury to construe the law. The refusal of the sixth is not argued. We fail to see the court erred in its rulings upon objections to remarks of counsel for appellee.

The judgment is affirmed.