## Aurora, Elgin & Chicago Railway Company v. William E. Gary, administrator.

### Gen. No. 4,509.

1. CONCLUSION OF WITNESS—*when question calling for, not ground for reversal.* It is not error for the court to permit a witness to be asked whether a particular street was a public street, where the fact that it was a public street was assumed by counsel and witnesses on both sides.

2. CONCLUSION OF WITNESS—*when question calling for, not improper.* A question which inquires of a witness what *means,* if any, there were to warn, etc., is not improper.

3. FLAGMAN—*when absence of, competent, notwithstanding such absence is not made the basis of a count.* While the absence of a flagman may not have been made by the pleadings and may not have been proper as a distinct basis of recovery, yet it is sometimes competent as a circumstance which tends to establish the lack of care of the defendant charged in the declaration.

4. NEGLIGENCE—*what evidence competent to establish.* Evidence which in some cases, under proper pleadings, would be a substantive basis for recovery, may nevertheless be competent in a case where it would not be, and is not sought to be, made a distinct basis of recovery, if it constitutes a circumstance which tends to establish the case as made by the pleadings.

5. NEGLIGENCE—*what evidence competent in support of charge of.* The condition and appearance of the surroundings of the place of the accident at the time of the injury and all circumstances which tend to show the want of care of the defendant, are competent in support of the charge of negligence.

6. EVIDENCE—*when competency of, cannot be urged as ground for reversal.* Where the objection to a question is not general but is in the following form : " The question is objected to as being leading in form and substance and not predicated upon any evidence in the case," its competency cannot be urged as ground for reversal.

7. REMARKS OF COUNSEL—*when not ground for reversal.* Remarks of counsel are not ground for reversal where objections thereto have been made and sustained and no exception preserved.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of DuPage County; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed October 25, 1905.

HOPKINS, PEFFERS & HOPKINS and JOHN A. RUSSELL, for appellant.

L. E. DeWolf and Botsford, Wayne & Botsford, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

On the afternoon of March 12, 1903, as Mrs. Oresta J. Richardson was passing north upon a sidewalk on the east side of Main street in the city of Wheaton, and crossing the tracks of the Aurora, Elgin and Chicago Railway Company, operating a railway by electric power, she was struck by a car coming from the west. Her right foot was crushed, her collar bone was broken, the back of her scalp cut open, and she received other bruises. She was removed to a hospital, the fracture of her collar bone was reduced, the scalp wound sewed up, and her right leg amputated four or five inches above the ankle. Eighteen days later she suddenly died as hereinafter stated. She left as her next of kin a husband and two grandchildren, and this suit for their benefit was brought by her administrator against the railroad company. There were ten counts in the declaration, being counts numbered one to nine, and count numbered three and a half; and these attributed her death to the negligence of defendant in various respects. Some of these counts were amended. The fifth count charged failure to maintain a flagman at the crossing as required by an ordinance of the city of Wheaton. To that count defendant filed a special plea to the effect that said ordinance was afterwards repealed. Plaintiff demurred to this plea. The demurrer was overruled, and plaintiff elected to stand by the demurrer. By the 27th instruction given for defendant, the court told the jury to disregard said fifth count in making up its verdict. The second count was based upon the alleged failure of the defendant to sound a whistle or ring a bell continuously from a distance at least eighty rods from the crossing, as required by the statute. By the 26th instruction given for defendant the jury were told that the said statutory regulation applied only to railroads using locomotive engines and steam as a motive power, and that there was no such statutory regulation applying to defend-

ant. By this instruction the second count was practically withdrawn from the jury. The case went to the jury upon the other counts and the plea of not guilty. There was a verdict and a judgment for plaintiff for $2,500 from which defendant appeals. The objections argued here mainly relate to the rulings of the court upon questions of evidence.

It is argued the court erred in permitting plaintiff to ask a witness whether or not Main street was a public street. Many witnesses called it Main street without any objection being interposed. Witnesses spoke of the sidewalk on the east side of "Main street" and the west side of "Main street," without objection. Defendant's counsel in questions to witnesses spoke of the sidewalk on the east side of "Main street." Defendant's third instruction told the jury that deceased and defendant had an equal right to cross the street there. It was shown there was a hotel on Main street just south of the defendant's railway, and also a livery stable and store; and about a third of the population lived south of the railway, and many of them used this street in going back and forth to the other part of the city. Defendant's motorman testified for it, called this "Main street," and stating that he gave two long and two short whistles for this crossing. Defendant's counsel asked its witnesses on what part of "Main street" the cars were when the second alarm was sounded. The testimony on both sides was that defendant obtained its power from an electric third rail, and that it had no third rail on Main street crossing. We think it was assumed by counsel and witnesses for both sides that this was a public street, and that there is sufficient proof on that subject, aside from the answer to the question objected to, so that the jury would have been warranted in finding it a public street, defendant having introduced no evidence questioning that fact.

Plaintiff asked a witness what means, if any, there were at Main street in March 1903, to warn foot passengers of the approach of cars, and the witness answered that there were none at all. An objection to the question, and a motion to strike out the answer, were denied. It is

argued the answer was a conclusion of the witness. We are of opinion that the question was proper and that while the answer may have been mistaken as to the fact, yet it was not an answer which the court was authorized to exclude. Besides, the question had already been practically answered without objection, for the witness had already stated that there was no flagman and no gates at the crossing. It seems to be suggested that such proof was not competent. It was held in C. & I. R. R. Co. v. Lane, 130 Ill. 116, that although there was no ordinance requiring a flagman to be placed at a crossing, yet the fact that there was no flagman there was properly shown to the jury as one of the existing circumstances attendant upon the alleged injury; that while the absence of a flagman was not negligence, yet such absence in connection with proof of the condition in that particular locality in respect to the population, travel and otherwise, would shed light upon the question of the care and caution upon the part of defendant in running its trains that the safety of the public would reasonably require; and that it was proper for the court to refuse to instruct the jury that they should entirely disregard such circumstances in determining whether the defendant was guilty of the negligence charged in the declaration.

It is argued the court erred in permitting a witness for plaintiff to testify that there was no third rail across the street, and that no electric power could be used in stopping the car while on that street, the ground of the objection being that there is no charge in the declaration of negligence in the construction of the road. The proof was not offered to show such negligence, nor did any instruction authorize a recovery upon any such grounds. The proof was competent as descriptive of the *locus in quo*. It had a further obvious application. The car started from defendant's depot, a distance of about 186 feet from the west side of Main street. Main street was sixty-six feet wide. Mrs. Richardson was on the sidewalk on the east side of Main street. For about fifty feet of the width of the street there was no third rail to convey power to the car. The

motorman knew the means of obtaining power, and knew there was no such means in the street, and that after the car reached the street he would have no electric power with which to stop it suddenly, but must depend upon a mere air brake. The declaration alleged that defendant so carelessly and negligently caused its car to be driven to and over said crossing that it struck deceased with great force and violence, inflicting injuries upon her from which she died. The motorman testified that when he was half way between the station and the crossing he saw deceased approaching the track and walking as an old person does, and then blew a whistle, when about 100 feet west of the east line of Main street. Witnesses for plaintiff testified that he was about half way from the depot to the street when he blew the whistle and that Mrs. Richardson was then upon the track. He did not then apply electric power to check the speed of his car, but waited until after he was past the middle of the street and about six or seven feet from her, when he whistled again, and applied the air brake. There was no third rail there, and he did not attempt to reverse the current. The speed of his car was such that he ran from forty to one hundred feet east of the street. According to defendant's witnesses, the car was forty-seven feet long, and the rear of the car had passed twenty feet beyond the street, so that the car had passed about seventy feet from the place where it struck Mrs. Richardson. Other evidence for plaintiff tended to show that the car had gone nearly one hundred feet. Due care is such care as a person of ordinary prudence would exercise under the circumstances of a particular case. One of the circumstances which it was proper to prove to enable the jury to determine whether the motorman was exercising due care from the time he first saw Mrs. Richardson and sounded the whistle first, at which time he testified she was approaching the track as old people do, and others testified she was already on the track, was the fact that he knew he had only a comparatively short distance left during which he could have the aid of electric power to stop or check the car, and that

after he passed beyond the west line of the street he would have only an air brake with which to stop it, and that, knowing those facts, he went on without attempting to stop or check the car while he had electric power at his command. This proof all bore upon the question whether the motorman was negligent.

It is argued the court erred in permitting plaintiff to prove that an air brake was used on this car, when the declaration did not charge the use of defective appliances. This proof did not show the appliances were defective. The motorman knew what appliances he had, and this proof bore upon the question whether he used due diligence in the conduct of the car after he saw deceased. Besides, defendant proved the same fact by one of its witnesses.

It is argued the court erred in permitting proof of what there was between the point where the deceased was as she approached the crossing, and where the car was as it came from the depot to the crossing, and also proof that defendant's depot and car were of nearly the same color, the ground of objection being that the declaration did not charge wrongful or negligent construction or equipment of defendant's railway. This proof was proper as descriptive of the surroundings at the scene of the accident. It also bore on the question whether Mrs. Richardson was negligent, or in the exercise of due care, as she approached defendant's track. If defendant's depot just beyond and the car were similar in color, Mrs. Richardson might have supposed she saw the depot in looking at the car or might not have distinguished between them. Two freight trains were passing on the tracks of the Chicago & Northwestern Railway fifty feet beyond the tracks of the defendant, and the noise of those trains may have tended to confuse Mrs. Richardson and to prevent her hearing the whistle sounded by the motorman. The motorman knew at least one freight train was then passing on the same railway and it was for the jury to say whether he should have known that the noise of that train might prevent Mrs. Richardson from hearing the whistle he sounded. Like suggestions

apply to defendant's contention that plaintiff should not have been permitted to prove the location of the hotel and other structures along the highway on which Mrs. Richardson was traveling just south of defendant's right of way. This proof was descriptive of the surroundings, and bore upon the question of the care required of and exercised by Mrs. Richardson and the motorman, respectively. It also tended to establish that this was a public street. Prout, a witness for plaintiff, testified to certain measurements. On cross-examination he said he did not know whether the objects he measured were in the same condition when he measured them as at the time of the accident, and defendant thereupon moved to exclude his testimony, and this was denied. Most of the measurements he gave were drawn out by the defendant on cross-examination. They related also to a plat which was introduced in evidence, but seems not to be in the record before us. All that was material in his measurements was proven by other witnesses without objection.

Dr. McDonald, a physician and surgeon in the employ of the defendant, attended Mrs. Richardson in the hospital. Plaintiff called him as a witness, and proved by him her condition when she reached the hospital, his amputation of her leg next day, and the circumstances of her death the eighteenth day after the injury. On that day she was sitting up in bed, and he was dressing her leg. The stump was almost entirely healed, there was a firm union of the collar bone, she had almost entirely recovered, and the doctor testified he intended to dismiss the case in a few days. She was laughing very heartily, and apparently feeling very well. She suddenly complained of feeling faint. The doctor laid her back in bed, and she died within five minutes. A *post-mortem* disclosed a clot in the heart, three or four inches long and half the size of a lead pencil, obstructing the orifice. Dr. McDonald testified a clot of blood might be in the circulatory system any number of years before it reached the heart and caused death; that anything which would destroy the blood corpuscles would

form a clot, that if a blow or injury was such as to destroy the blood corpuscles and injure the lining membrane of a blood vessel, it would form a clot, but such injury could not form a clot unless it produced those conditions. He was then asked, assuming that Mrs. Richardson was struck by an electric car on the day he had stated he first saw her at the hospital, and was injured to the extent which he found at the time she was brought to the hospital, whether or not the injuries he then found might or might not cause a blood clot, and he answered that the injury in that particular case could have caused a blood clot. He was then asked this question: "State, doctor, in your judment as a surgeon, whether or not her death, occurring as you have stated, was caused by the injuries which you found upon examination of her." It is contended that the court erred in overruling an objection to this question, for the reason that it called upon the witness to usurp the functions of the jury—that this was the very question that the jury was to decide, reliance being had upon Illinois Central R. R. Co. v. Smith, 208 Ill. 608, and other cases. It would have been proper to inquire of this physician whether Mrs. Richardson's death could have resulted from the injuries he found upon her person, but we do not doubt that the question put was improper, and invited the witness to invade the province of the jury. There are several reasons, however, why the action of the court does not call for a reversal of the judgment. First, while the abstract makes it appear that the objection to the question was general, the record discloses that the whole objection was as follows: "The question is objected to as being leading in form, and suggestive, and not predicated on any evidence in the case." It is not now argued that the question was leading or suggestive, or foreign to the evidence. The witness was a surgeon; he had stated how Mrs. Richardson's death occurred, and what was revealed by the *post-mortem* he had conducted, and he had described the injuries he found upon her person when he was called to attend her on the day she was injured. The court, therefore, did not err in

overruling those special objections. It may well be that, had defendant objected on the special ground that the question asked the witness to invade the province of the jury, or had made the general objection that the question was incompetent, plaintiff's counsel would have modified the question so as to obviate that objection and make the question proper. By failing to make that objection, the defendant waived it. It would not be fair, either to the plaintiff or to the trial court, to permit defendant to have the benefit now of an objection which it did not then present. Second, to make the result reversible error the reply must have been harmful. The witness did not answer that these injuries caused her death. His answer was, "I would say probably it was the result of the injuries." This physician was in the employ of defendant. He was cross-examined by defendant on this subject, and responded freely. He testified on that cross-examination that clots adhere to the walls of the principal blood vessels, in people of apparently good health; that a sudden exertion, such as laughing unduly, coughing, a spasm of mirth or heavy lifting might break them down and throw them into the circulation, and produce death within a few minutes if the clot reached the heart and obstructed the circulation; that the clot in question was formed on one of the veins and carried to the heart; that he could not tell when it actually formed, and would not state positively the inducing cause; that he was only stating probabilities, and could go no further; that the exertion of sitting up and the laughing undoubtedly dislodged the clot in this particular case; that he could not state positively whether there was some other cause, some constitutional derangement, which superinduced the formation of this clot, or whether the clot was the result of the accident; that such clots will adhere to the larger veins for indefinite lengths of time, and where they are so adhering any unusual exertion, violent action, traumatism, laughter, the exertion of lifting or running, is liable to detach them and throw them into the circulation, and cause death; and that he did not know what the approximate cause of this

death was.  When all this evidence is considered together,
we conclude no error prejudicial to defendant was committed, and that what we said in Shorb v. Webber, 89 Ill. App.
474, approved on appeal in 188 Ill. 126, is applicable.
Third, in the ninth instruction, given at defendant's request, it is assumed that the injury in question caused
the death of Mrs. Richardson.  The defendant, having requested and induced the court to assume that as a fact in
an instruction to the jury, cannot now be heard to dispute what it then, by the framework of its instruction, admitted.

Objection is also made that defendant was not allowed
to ascertain from Dr. McDonald on cross-examination
what Mrs. Richardson told him as to the manner in which
she was 'injured.  Nothing in the direct examination authorized this inquiry, but if it had been error to refuse to
permit this cross-examination, defendant afterwards called
the doctor as its own witness, and obtained a full disclosure of all that Mrs. Richardson told him.  The court excluded a statement by the doctor on cross-examination that
Mrs. Richardson told him she did not blame defendant for
her injury.  This was excluded, because the court conceived that the question which elicited that answer was
improper, but the court at once put a proper question,
which produced the same statement again from the witness, so that defendant had the testimony.  Mrs. Hunt,
a sister of Mrs. Richardson, testified that deceased left as
her next of kin a husband and two grandchildren, whom
she named, and also stated that she boarded with deceased,
and, over defendant's objection, testified she paid three dollars per week for her board.  If this testimony that she
paid her board and the amount be considered incompetent,
still we fail to see how it harmed defendant.  The
fourth instruction given at plaintiff's request confined the
jury to just compensation for the pecuniary injury resulting from the death of deceased to her next of kin, and
there was no pretense that that included Mrs. Hunt.  Defendant complains because the court permitted plaintiff in

recross-examination of its witness Stare, to inquire into the effect of reversing the current upon the stopping of the car, which it is said was incompetent because not cross-examination, as Stare was not an expert.   Defendant had previously asked Stare this question :   " What would be the effect of reversing the current or machinery in crossing a highway ? " to which the witness answered, " It would have no effect until it strikes the third rail." Then defendant asked: " Until it got beyond the street and connected with the third rail ? " to which the witness replied, " No, sir."   We think these questions by defendant and the answers thereto on the direct examination justified the court in permitting the subsequent recross-examination of which complaint is made.   It is urged the court erred in permitting plaintiff, in cross-examining defendant's motorman, to inquire what space it requires to stop the car by reversing the current, and as to whether reversing the current would stop the car suddenly.   It is argued this was not cross-examination.   The witness had stated in chief that after he passed Mrs. Richardson, he ran about forty feet, and had also said in chief, " I stopped the car as soon as I could."   This justified an inquiry on cross-examination as to the effect of using the appliances he had in stopping the car.   He testified he ran about forty feet after he got upon the third rail.   He also testified that the rear of the car went twenty feet east of the street, and other proof showed the car was forty-seven feet long, so that according to that testimony the head of the car which struck Mrs. Richardson must have gone at least seventy feet after it struck her. This has some tendency to show the speed at which the motorman was driving the car, and it was a question for the jury whether it was negligence to run at that speed after the motorman saw Mrs. Richardson, plaintiff's testimony tending to show that Mrs. Richardson was already on the track when the motorman first whistled, which he admits was just after he first saw her.

Plaintiff's attorneys made several improper remarks in their arguments to the jury.   In each of these cases, upon

objection being made by defendant's counsel, the court ruled for defendant and declared the statements improper, and no exception was taken by the defendant, and therefore no question relating thereto was saved. Afterwards, one of plaintiff's counsel told the jury that it was for them to say whether, if defendant had taken the precaution to have a flagman, or gates, or an electric gong, the life of deceased would not have been saved. To that statement defendant objected, the court held it proper, and defendant excepted. The fourth count of the declaration charged that the defendant did not construct gates or barriers there, and the sixth that defendant negligently failed to construct, provide or maintain any means of giving warning of the approach of its cars at Main street. The remarks to which this exception was preserved seem, therefore, to have been proper. C. & I. R. R. Co. v. Lane, *supra*. The court also gave an instruction, at defendant's request, that defendant was under no obligation to maintain gates or keep a flagman at that crossing, and if it did not, that was not to be construed by the jury as showing negligence of the defendant.

It is argued that Mrs. Richardson was not in the exercise of due care at the time of the injury, and therefore the court should have given a peremptory instruction to find for defendant at the close of the testimony. In view of the noise and confusion created by the passing of two trains on the Northwestern road only fifty feet beyond this track, the possible obstructions to the view, the fact that the car and depot of defendant a short distance west of the street were of similar color, that the car came on with considerable speed, and that the only warning given was an air whistle, which might not have been heard above the noise of the two passing trains, and in view of the proof by several witnesses that the deceased looked both ways, and of other testimony in the record, we are of opinion the proof required the court to submit to the jury the question whether she was exercising due care. So, also, when this proof is considered with the testimony of the motorman as

to seeing Mrs. Richardson approaching the track, noticing that she walked as an old person does, and that he then had no notion whether she knew the car was coming or not, and that he knew of the passing freight trains and did not check the speed of the car while he had electric power which he could use therefor, but went on without checking it till within six or seven feet of Mrs. Richardson, we think the question whether or not the motorman was negligent was one which the trial court was required to submit to the jury.

We are of opinion that instructions 1 and 9, given for plaintiff, were not calculated to lead the jury to understand that Mrs. Richardson was not required to exercise due care till the instant of the accident, after she was on the track. Moreover, the second instruction given for defendant told the jury that she was required to exercise due care as she approached the crossing. Several of defendant's instructions, in stating when deceased was required to exercise due care, used the expression which it now criticises, "at the time of the injury." Complaint is made that there was no proof warranting plaintiff's instructions 5, 6 and 10, submitting the question whether defendant's servants ran the car upon the crossing in a wanton and reckless manner. The seventh count made such a charge, and, without repeating all the evidence bearing upon the subject, we think the evidence permitted the submission of that issue to the jury, even though the proof might not have been strong enough to require the court to give those instructions. The eleventh instruction given at plaintiff's request required defendant to use ordinary care and prudence to guard against injury to those traveling upon the highway and crossing its track, and required defendant to provide such protection as common prudence and the public safety may dictate should be provided. Defendant insists it is not a street railway, but is operating under the general railroad law, and the language of that instruction is justified by what was said in C., B. & Q. R. R. v. Perkins, 125 Ill. 127, and C. & I. R. R. Co. v. Lane, *supra*. Complaint is made of the refusal of an in-

struction offered by defendant to the effect that no statutory duty was imposed upon it to ring a bell or sound a whistle as it approached this crossing, and that no recovery could be had for injuries claimed to be received through a failure to perform such alleged statutory duty. But the court gave instruction No. 26, requested by defendant, which was to the same effect. The jury were very fully and favorably instructed for defendant, and much that is contained in the refused instructions was but a repetition of that which was embodied in the given instructions. We have examined some other matters complained of, and find them not such as to call for a reversal of the judgment. Plaintiff has assigned cross-errors based upon the action of the court in overruling his demurrer to the special plea to the fifth count, but as we do not reverse the judgment, we deem it unnecessary to consider the question raised by that cross assignment.

The judgment is affirmed.

*Affirmed.*